### BIXBY et al. v. DEEMAR.

(Circuit Court of Appeals, Fifth Circuit.   March 13, 1893.)

#### No. 107.

1. SHIPPING—CARRIAGE OF GOODS—LIABILITY FOR LOSS—MASTER'S NEGLECT TO SAVE CARGO.
It is the duty of the master of a wrecked vessel, whether insured or not, to use reasonable diligence to save and reship the cargo; and where it appears that a part of the cargo was so stored that it might have easily been saved, and that several opportunities to reship what was saved were neglected, the carrier is responsible to the shipper for his loss, although the shipment was at the owner's risk, and "dangers of the river" were excepted.

2. SAME.
Where the master of a wrecked vessel abandons her to the underwriters without the exercise of due diligence to save the cargo, the fact that the underwriters take possession, and sell a part of the cargo which is not insured, does not exempt the carrier from liability to the shipper for his loss.

3. ADMIRALTY—APPEAL.
A decree in admiralty, awarding damages to a shipper, should be affirmed on appeal when it does not clearly appear on what grounds the district court based its award, and the proof does not clearly fail to show that the loss was caused by the master's neglect to use proper means for saving the cargo.

Appeal from the Circuit Court of the United States for the Eastern District of Louisiana.

In Admiralty. Libel in personam by H. H. Deemar against Horace E. Bixby and the St. Louis & New Orleans Anchor Line for loss of cargo on respondents' steamer. Decree for libelant. Respondents appeal. Affirmed.

R. H. Browne, (Browne & Choate, on the brief,) for appellants.
J. W. Gurley, Jr., (Gurley & Mellen, on the brief,) for appellee.

Before, PARDEE and McCORMICK, Circuit Judges, and TOUL-MIN, District Judge.

McCORMICK, Circuit Judge. On the 3d December, 1890, H. H. Deemar, the appellee, shipped on board the steamer City of Baton Rouge, whereof the appellants were master and owners, in the port of St. Louis, 61 beehives filled with bees, and other articles, not necessary to specify, to be delivered to him in the port of New Orleans. He paid the freight, $13.65, and received a bill of lading in which were expressed "dangers of the river excepted," and at "owner's risk." The steamboat proceeded on her voyage until the 12th of December, when, without her fault or the fault of her master or other officers or employes, she struck a hidden obstruction, and in a few minutes filled with water. The hull parted from her cabin, and sank in very deep water. The cabin, sustained by buoyant freight, floated in an eddy until it, partly submerged, was drawn to shore and fastened. The master, deeming both vessel and cargo a total loss, came to New Orleans the next day, and abandoned the cargo to the underwriters. The agent of the underwriters sent a steamer from New Orleans to the place of the wreck, the Hermitage landing, in Louisiana, only a short distance from New Orleans, to save what of the cargo could be saved, and bring it to New Orleans. The appellee's goods were not insured. The beehives had been placed on the cabin or saloon deck, and the day after the wreck—that is, on the 13th of December—most of them were taken on shore. Several boats passed the Hermitage landing, and proceeded to New Orleans, between the 13th of December and the 24th of that month, on which last day the beehives were brought to New Orleans on the steamer which had been sent to the wreck by the agent of the underwriters, and were sent to auction, and sold for account of whom it might concern, and were never delivered to appellee. Most of the bees—about two thirds in each hive—were dead, and the hives, 46 in number, were sold for only $5.06, or 11 cents a hive. The appellee exhibited his libel against the appellants, and the customary proceedings were had, and at the hearing on the proofs the district court gave judgment for appellee against the appellants in solido for $367.66.

Respondents appealed, and assign the following errors:

"(1) That, the carrier having established that the damage and loss occurring were within the exceptions contained in the bill of lading, the burden of proof was on the shipper to prove want of skill or diligence; and, the libelant having failed to show this, the judgment should have been in defendants' favor. (2) That the vessel being wholly lost, and every part and parcel of the cargo either wholly lost or greatly damaged, (to more than 50%,) the carrier had the right to abandon the cargo to the underwriters. And the master having abandoned the cargo to the underwriters, and the underwriters having taken possession of and sold the goods, the value of which is herein sued for, the court erred in holding the carrier responsible for any sum whatever. (3) That the bees, etc., having been sold at public auction by the underwriters, who had taken charge of them, the amount they brought in open market, after due advertisement, was the real value thereof, and the court having found the carrier liable, there being no neglect, want of skill, or negligence, the court erred in adjudging the carrier liable for any greater amount

than what the salved goods sold for in open market. (4) That the underwriters having taken possession of and sold the bees, beehives, etc., abandoned to them by the carrier, the underwriters, and not the carrier are responsible for whatever value they possessed, January 4, 1893."

The proof shows that there was not a total loss of these beehives and bees. It was the master's duty to use all reasonable care in saving the cargo, and sending forward such as was saved, if reasonable opportunity offered. 1 Pars. Shipp. & Adm. 234; Abb. Shipp. 455. Whether insured or not insured, this duty the carrier owed to whom it might concern, to save what could be saved by reasonable care and effort, and to reship. Three fourths of the beehives were gotten on shore within 24 hours. The proof does not show what proportion of the bees had then perished, but it does show that, after being abandoned 11 days, and then sent to auction, the purchaser found even then one third of the bees in each hive still alive; and his testimony indicates that, while some were drowned, others, and perhaps the greater part of those that died, were smothered by reason of the drowned ones falling before the entrance. The master's care of cargo relates to its nature. He is to give such reasonable care as that nature calls for, and he must deliver the goods, unless excused by the excepted risks. While the proof does not show what was the exact condition of these bees when they were got ashore, it does show that they were so stored on the boat as to be most accessible and easy to have been gotten ashore after the disaster, that much more than 50 per cent. of the hives were in fact got ashore within 24 hours, that there were at least two convenient opportunities to have reshipped them neglected; and, on the whole proof, our judgment is that appellants' first and second propositions, if sound, are not well taken. And the fourth proposition appears to us to be unsound.

The third proposition presents more difficulty, not because it states a general rule with exactness, and applicable to the case, for it does not do that, in our judgment, but because of our inability to discover in the proof, with certainty, the basis or the support on which the amount of damages adjudged by the district court rests. It appears to us that the district judge probably held that the proof was not sufficient to show that these bees were necessarily materially damaged by the disaster the boat encountered; that the great injury they did receive resulted from the master's neglect after encountering the peril in which his boat perished. If such was his view, we cannot, from all the proof, say it was so erroneous as to justify us in setting his judgment aside; for, that being so, the proof does sufficiently support the judgment. On the whole case, therefore, we consider that the judgment of the district court should be affirmed.